FILED
2019 Dec-18 PM 12:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LAUREN LEATH, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v.  ] | 4:19-cv-00612-ACA |
| ] | |
| SOCIAL SECURITY ] | |
| ADMINISTRATION, ] | |
| COMMISSIONER, ] | |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION

Plaintiff Lauren Leath appeals the decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I. PROCEDURAL HISTORY

On January 26, 2016, Ms. Leath applied for supplemental security income benefits, alleging that her disability began on November 30, 2015. (R. at 193). The Commissioner initially denied her application and she requested review by an Administrative Law Judge ("ALJ"). (*Id.* at 116–30, 141–43). After holding a hearing (*id.* at 102–15), on June 1, 2018, the ALJ issued an unfavorable decision (*id.* at 46–56), which Ms. Leath requested that the Appeals Council review (*id.* at 19).

Ms. Leath submitted various new medical records to the Appeals Council, including treatment notes from Ms. Leath's primary care physician, Dr. Jane Teschner.[1] (R. at 63–101; *see also* R. at 2; Doc. 10 at 3). On March 28, 2019, the Appeals Council denied Ms. Leath's request for review, finding that the additional evidence did not show a reasonable probability that it would change the outcome of the decision. (R. at 1–5). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. § 1383(c)(3).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept

---

[1] Ms. Leath concedes that the other records submitted to the Appeals Council "are not relevant to the issue of disability." (Doc. 10 at 6–7).

2

as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Leath had not engaged in substantial gainful activity since January 13, 2016. (R. at 48). He found that Ms. Leath had the severe impairments of borderline intellectual functioning and obsessive-compulsive disorder, but that her "status post hernia repair and removal of abdominal mass," hypertension, gallstones, hematomas, obesity, and depression were not severe impairments. (*Id.* at 48–49).

The ALJ concluded that Ms. Leath did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 49–50). After considering the evidence, the ALJ determined that Ms. Leath had the residual functional capacity to perform a full range of work at all exertional levels but that she was "limited to understanding, remembering, and carrying out simple work"; "[d]ecisionmaking should be occasional"; and "any changes in the worksite should be infrequent or less than occasional." (*Id.* at 50–51).

Based on his finding about Ms. Leath's residual functional capacity, and with the assistance of testimony from a vocational expert, the ALJ found that Ms. Leath would be able to perform jobs such as cleaner, inspector and hand packager, and small-parts assembler, all of which exist in significant numbers in the national economy. (R. at 55). Accordingly, the ALJ determined that Ms. Leath had not been

under a disability as defined in the Social Security Act since she filed her application. (*Id.*).

## IV. DISCUSSION

Ms. Leath asserts that (1) the ALJ failed to give proper weight to the opinion of treating physician Dr. Jane Teschner and non-treating physicians Dr. Robert Estock and Dr. June Nichols; (2) the vocational expert's testimony was not substantial evidence because the hypothetical question posed to her did not encompass all of Ms. Leath's limitations; and (3) the Appeals Council erred by declining to consider new, material, and chronologically relevant evidence. (Doc. 10 at 14–32).

### 1. Physician Opinions

Ms. Leath contends that the ALJ erred in his assignment of weight to the opinions of treating physician Dr. Teschner and two non-treating physicians, Dr. Estock and Dr. Nichols. (Doc. 10 at 14–15, 20–23).

Absent good cause, an ALJ must give "substantial or considerable weight" to the medical opinions of "treating physicians." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *see* 20 C.F.R. § 416.927(c)(2). Good cause to reject a treating source's opinion "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or

(3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

When addressing a non-treating source's medical opinion, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Id.* "[T]he ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added); *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

### i. Dr. Teschner

Ms. Leath contends that the ALJ erred in giving little weight to the opinion of treating physician Dr. Teschner, who opined that Ms. Leath would be off-task thirty percent of an eight hour day and would miss three to four work days every month based on psychological symptoms. (Doc. 10 at 14–15). Ms. Leath argues that, when the records submitted to the Appeals Council are considered, the evidence supports Dr. Teschner's opinion. (*Id.* at 17–18).

The records submitted to the ALJ show that Dr. Teschner was Ms. Leath's primary care physician. (*See* R. at 53). Dr. Teschner filled out a mental health source statement in which she opined that Ms. Leath could understand, remember, and carry out very short and simple instructions; maintain attention, concentration,

6

and/or pace for periods of at least two hours; perform work activities within a schedule and be punctual; sustain an ordinary routine without special supervision; adjust to routine and infrequent work changes; interact with supervisors and co-workers; and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. at 417). However, she also opined that Ms. Leath would be off-task thirty percent of an eight hour day because of depression and anxiety, and she would miss three to four days of work in a thirty day period. (*Id.*). A mental health questionnaire that Dr. Teschner filled out stated that Ms. Leath suffered from a depressed mood, diminished interest in almost all activities, observable psychomotor agitation or retardation, and disproportionate fear or anxiety about at least two different situations. (*Id.* at 418).

Aside from the mental health source statement and mental health questionnaire, Ms. Leath also submitted Dr. Teschner's treatment notes from August to November 2015. (R. at 395–406). Those treatment notes indicate that in November 2015, Ms. Leath complained of depression, crying excessively, and feeling sad. (*Id.* at 402). Dr. Teschner diagnosed her with major depressive disorder, single episode, and prescribed Prozac. (*Id.* at 403).

The ALJ gave little weight to Dr. Teschner's opinion that Ms. Leath would be off-task thirty percent of an eight hour day and would miss three to four days of work in a thirty day period, explaining that "[n]othing in Dr. Teschner's treatment

7

notes . . . supports her assessment." (R. at 52). The ALJ also noted that the opinion of another doctor failed to support Dr. Teschner's opinion. (*Id.*).

After the ALJ's decision (issued on June 1, 2018), Ms. Leath submitted more records from Dr. Teschner, dated April 2016 through May 2018. (*See* R. at 56, 63–101). Those records indicated that Ms. Leath had repeatedly complained about crying spells, depression, and anxiety. (R. at 64, 71, 73, 79, 82, 84–85, 87–89, 91, 94, 97, 100).

Ms. Leath argues that, when the court considers the records submitted to the Appeals Council after the ALJ's decision, Dr. Teschner's opinion is well-supported, so that the ALJ lacked a basis to reject it. (Doc. 10 at 15, 17). Ms. Leath does not explain how the ALJ could be expected to consider evidence that she had not presented to him. But even assuming that she had submitted that evidence before the ALJ made his decision, she has not explained how records showing only that she had complained of anxiety and depression support Dr. Teschner's opinion that she would be off-task almost a third of a work day and would miss three to four days of work per month. (*See id.*). The court finds that the ALJ articulated a specific reason for giving little weight to Dr. Teschner's opinion, and good cause supports that reason because Dr. Teschner's opinion was conclusory and uncorroborated by the other evidence in the record. *See Phillips*, 357 F.3d at 1241.

### ii. Dr. Nichols

Next, Ms. Leath contends that the ALJ erred in rejecting a part of Dr. Nichols' opinion. (Doc. 10 at 20–21). She argues that Dr. Nichols' opinion was consistent with an earlier examination by a clinical neuropsychologist. (Doc. 10 at 20–21). However, consistency with another doctor's report is not the standard for finding an ALJ's credibility determination to be erroneous. Instead, the standard is whether the ALJ stated with particularity the reason for his credibility determination. *See Winschel*, 631 F.3d at 1179.

Here, Dr. Nichols reported that Ms. Leath has a full-scale IQ score of 74, with symptoms of obsessive-compulsive disorder and borderline intellectual functioning, and deficits in reading comprehension. (R. at 413–16). Dr. Nichols concluded that Ms. Leath "is able to handle her own funds and cannot live independently with family assistance [sic]." (R. at 416). The ALJ accurately summarized Dr. Nichols' opinion, but afforded the opinion only "some weight" because although Dr. Nichols "appears to state that the claimant cannot live independently, . . . the claimant's history of semi-skilled work and broad activities of daily living, including caring for two children, show otherwise." (R. at 52–53). And indeed, Ms. Leath told Dr. Nichols that she took "care of cleaning, supper and her two children." (R. at 415). In addition, Ms. Leath has a job history including semi-skilled work as a

cashier. (R. 112, 216). This is sufficiently specific to support the ALJ's determination of the weight to give Dr. Nichols' report.

### iii. Dr. Estock

Finally, Ms. Leath asserts in passing that the ALJ erred in assigning weight to Dr. Estock's opinion. (Doc. 10 at 2, 20). However, although she recites the holdings of a number of cases, she provides no discussion or analysis in support of that contention. (*See id.* at 20–23). "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (quotation marks omitted).

Ms. Leath's summary of the ALJ's alleged errors of law (doc. 10 at 2) and one numbered section of her brief (*id.* at 20) state that she is challenging the ALJ's assignment of weight to Dr. Estock's opinion. The brief block quotes, summarizes, or simply cites cases involving the standard for review of an ALJ's credibility determinations, but it does not provide any substantive analysis of how the ALJ's allocation of weight was erroneous. (Doc. 10 at 20–23). This sort of perfunctory argument gives neither the Commissioner nor the court any guidance about

Ms. Leath's argument aside from the fact that she asserts the existence of an error. *See Singh*, 561 F.3d at 1278 ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue . . . ."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."). Nor does Ms. Leath's reply brief remedy the deficiencies of her initial brief. (*See* Doc. 12 at 5–7). Because Ms. Leath's briefs do not present adequate argument on this issue, the court will not address it.

2. Vocational Expert's Testimony

Within the section of her brief devoted to the Appeal Council's denial of review, Ms. Leath asserts that the ALJ could not have relied on the vocational expert's testimony because the hypothetical question posed to the vocational expert did not encompass all of Ms. Leath's limitations. (Doc. 10 at 24–26). However, although she cites binding caselaw on the standard of review governing a vocational expert's testimony, she does not present any argument about what limitations the hypothetical question omitted. (*See id.*). Accordingly, Ms. Leath has abandoned this argument. *See Access Now, Inc.*, 385 F.3d at 1330; *also Sapuppo*, 739 F.3d at 681.

### 3. The Appeals Council's Consideration of New Evidence

Ms. Leath contends that the Appeals Council erred in denying review despite the submission of new, material, and chronologically relevant evidence—specifically, the additional treatment notes from Dr. Teschner. (Doc. 10 at 24). Ms. Leath acknowledges that the Appeals Council considered the new evidence that she submitted (*id.* at 27), but otherwise makes no argument about how that evidence would change the result (*see id.* at 24–32). Again, the court finds that Ms. Leath has abandoned this argument. *See Access Now, Inc.*, 385 F.3d at 1330; *also Sapuppo*, 739 F.3d at 681. Even if she had not, however, the court finds that the evidence was not material because there is no "reasonable possibility that they would change the administrative result." *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) (quotation marks omitted); *see also infra* at 8.

## III. CONCLUSION

The court **WILL AFFIRM** the Commissioner's decision to deny Ms. Leath's application for supplemental security income benefits.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this December 18, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE